**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

MARK EDWARD SLAYTON,     )
                            )
        Petitioner,     )
                            )
        v.               )      1:14CR201-1
                            )      1:16CV1279
UNITED STATES OF AMERICA,   )
                            )
        Respondent.     )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommended ruling on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 ("Section 2255 Motion") (Docket Entry 25). Because all of his collateral claims lack merit, the Court should deny relief.

### INTRODUCTION

This Court (per United States District Judge Catherine C. Eagles) previously entered a Judgment memorializing Petitioner's prison sentence of 78 months, imposed after his guilty plea to accessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). (Docket Entry 16; <u>see also</u> Docket Entry 1 (Indictment); Docket Entry 7 (Plea Agt.); Docket Entry 20 (Plea Hrg. Tr.); Docket Entry 21 (Sent'g Hrg. Tr.).)[1] Petitioner

_____

[1] Parenthetical citations refer to Petitioner's above-captioned federal criminal case.

appealed (see Docket Entry 17), but the United States Court of Appeals for the Fourth Circuit affirmed, United States v. Slayton, 629 F. App'x 475 (4th Cir. 2015). He then timely filed his Section 2255 Motion. (See Docket Entry 25.) The United States responded (see Docket Entry 27) and Petitioner replied (see Docket Entry 29).

DISCUSSION

According to Petitioner's Section 2255 Motion, "he received ineffective assistance of counsel from both trial and appellate counsel." (Docket Entry 25 at 1.) As to trial counsel, Petitioner scattered 12 sub-claims of ineffectiveness throughout his Section 2255 Motion. First, an introductory section (bearing the heading "Ineffectiveness of Both Trial (or sentencing) and Appellate Counsel" (id. (all forms of emphasis omitted)), alleges that:

1) "[trial] counsel's failure to object to or challenge certain admissions, resulted in th[is] Court's inability to properly weigh the factors and apply a more appropriate sentence" (id.); and

2) trial counsel's "performance caused the Court to overlook and/or down play the valuable testimony of expert Christie Cornwell" (id.).[2]

_____

[2] Consistent with the above-quoted, second sub-claim, the Section 2255 Motion later alleges – under the heading "Legal Argument and Authorities" (Docket Entry 25 at 6 (all forms of emphasis omitted)) and the sub-heading "[Petitioner] was Deprived of Effective Assistance" (id. (all forms of emphasis omitted)) –
(continued...)

Next, under the heading "Background" (id. at 2 (all forms of emphasis omitted)) and the sub-heading "The Offense and Sentence" (id. (all forms of emphasis omitted)), the Section 2255 Motion alleges that:

3) trial counsel "fail[ed] to argue for a lesser sentence in a post-conviction motion for a reduced sentence" (id. (parentheses omitted));

4) "had [Petitioner] been properly advised rather than coerced or induced to plead guilty and had [he] proceeded to trial, he could have received a lesser charge/offense and sentence" (id. at 3; see also id. (alleging that he "was forced or pushed to plead guilty," he "only accepted to plead guilty because counsel advised him that going to trial would result in more charges and more time," "[c]ounsel represented that the government agreed to 'the lowest possible charge,' despite no change in the sentencing guidelines," he "did not comprehend the Federal Rules of Criminal

---

[2](...continued)
that Petitioner's trial counsel was "ineffective by failing to advise the Court that expert Christie Cornwell's testimony should have had a stronger effect on Petitioner's sentence, as she is a credible 'witness' who administers the Sex Offender Program for the Federal Government in North Carolina" (id.), as well as – under the heading "Legal Argument and Authorities" (id. (all forms of emphasis omitted)) and the sub-heading "Sentencing Hearing" (id. at 9 (all forms of emphasis omitted)) – that "[t]he expert testimony of Christie Cornwell, who administers the Sex Offender Management Program in North Carolina for the Federal Government, should have carried significant weight, [but trial] counsel failed to effectively argue this point" (id. (emphasis omitted)).

Procedures [sic]," "[h]ad he been properly advised or guided, he would have proceeded to trial," and "[h]ad he known that the potential sentence was no different as a result of the plea bargain, he would have rejected the plea offer and proceeded to trial" (parenthesis omitted)));[3] and

5) Petitioner "was never advised of a 'Nolo Contendere' plea and did not understand the legal significance of such" (id.).

Then, under the heading "Important Facts and Information" (id. at 4 (all forms of emphasis omitted)) and the sub-heading "To be Considered for Relief" (id. (all forms of emphasis omitted)), the Section 2255 Motion alleges that:

6) trial counsel "did not mention, at sentencing, any of the relevant factors that would or could have resulted in a lesser sentence" (id.; see also id. (listing as matters trial counsel

_____

[3] Consistent with the above-quoted (fourth) sub-claim, the Section 2255 Motion later alleges – under the heading "Ineffective Assistance" (Docket Entry 25 at 5 (all forms of emphasis omitted)) and the sub-heading "Prejudicial Failures of Counsel" (id. (all forms of emphasis omitted)) – that trial counsel did not "[d]iscuss the trial process and procedures, and any consequences if Petitioner was to be convicted had he proceeded to trial" (id.) and failed to "[c]onsult with [him] regarding pleading guilty vs. going to trial" (id.), as well as – under the heading "Legal Argument and Authorities" (id. at 6 (all forms of emphasis omitted)) and the sub-heading "[Petitioner] was Deprived of Effective Assistance" (id. (all forms of emphasis omitted)) – that trial counsel "did not discuss any trial preparation or strategy, and . . . appeared very inexperienced in his confidence to take the case to trial" (id. at 7), "had [Petitioner] gone to trial, there is a reasonable probability that [he] would have received a lesser sentence" (id.), and trial counsel "advised [him] that going to trial would only result in more charges and [a] harsher sentence" (id.).

4

"should have vigorously argued" that Petitioner "voluntarily participated in two (2) polygraph testing [sic] and passed both," he had "no criminal history of any sort, had a successful career, [was a] productive member of his community[,] and had a strong support system," "after his arrest, [he] immediately upon questioning cooperated with law enforcement and the prosecution," he "did not know he was committing a Federal crime by accessing the images and[,] had he known the potential consequences, he would not have viewed or access [sic] any of the images," he "voluntarily admitted to [law enforcement] agents that he would always delete all the images he obtained and his admission was verified as true," "[a]round the time of his arrest, [he] had suffered from long-term depression and had other mental health issues that were untreated," he "voluntarily agreed to and submitted to a court-ordered psycho-sexual evaluation, which revealed past trauma and [a] maladaptive coping mechanism," he "received counseling[ and] therapy and completed treatment," he "had never been a threat or danger to his community," and he "was completely honest, did what he needed to in-order to maintain his moral character and was less likely to re-offend after his accomplishments" (emphasis, parentheses, internal quotation marks, and stray comma omitted))).[4]

---

[4] Consistent with the above-quoted, sixth sub-claim, the Section 2255 Motion later alleges – under the heading "Legal Argument and Authorities" (Docket Entry 25 at 6 (all forms of
(continued...)

Thereafter, under the heading "Ineffective Assistance" (<u>id.</u> at 5 (all forms of emphasis omitted)) and the sub-heading "Prejudicial Failures of Counsel" (<u>id.</u> (all forms of emphasis omitted)), the Section 2255 Motion alleges that:

7) trial counsel failed to "[n]egotiate a more favorable plea offer/bargain in a timely manner" (<u>id.</u>);[5] and

8) trial counsel did not "[p]repare or file any Rule 12 (pre-trial motions) submissions of any sort" (<u>id.</u>).

Finally, under the heading "Legal Argument and Authorities" (<u>id.</u> at 6 (all forms of emphasis omitted)) and the sub-headings "[Petitioner] was Deprived of Effective Assistance" (<u>id.</u> (all forms

---

[4](...continued)
emphasis omitted)) and the sub-heading "[Petitioner] was Deprived of Effective Assistance" (<u>id.</u> (all forms of emphasis omitted)) – that his trial counsel "did not forced [sic] any mitigating related issues" (<u>id.</u> at 8 (parentheses omitted)), as well as – under the heading "Legal Argument and Authorities" (<u>id.</u> at 6 (all forms of emphasis omitted)) and the sub-headings "Sentencing Hearing" (<u>id.</u> at 9 (all forms of emphasis omitted)) and "Appellate Counsel" (<u>id.</u> (all forms of emphasis omitted)) – that (A) trial counsel "failed to present evidence to the Court regarding multiple mitigating factors" (<u>id.</u>), such as Petitioner's consistent "acknowledg[ment] that he was in violation of the law, but . . . was unaware of the law" (<u>id.</u>) and fact that, "[a]lthough . . . most child pornography offenders maintain a 'library' of material, this was clearly absent in [his] case" (<u>id.</u>), and (B) "if [his trial] counsel had properly raised and argued certain mitigating factors, [Petitioner] could have received a more favorable sentence" (<u>id.</u> at 11).

[5] Consistent with the above-quoted seventh sub-claim (but mentioned along with the fourth sub-claim (for ineffectiveness that caused Petitioner to plead guilty rather than proceed to trial), the Section 2255 Motion also alleges that "[c]ounsel erroneously advised Petitioner that the maximum sentence could not be negotiated" (Docket Entry 25 at 3).

of emphasis omitted)), "Sentencing Hearing" (<u>id.</u> at 9 (all forms of emphasis omitted)), and "Appellate Counsel" (<u>id.</u> (all forms of emphasis omitted)), the Section 2255 Motion alleges that:

9) "prior to sentencing[, trial counsel should have] pointed to (or cited) numerous cases with similar circumstances where substantial departures from the [S]entencing [G]uidelines have been upheld on appeal" (<u>id.</u> at 6), "[trial] counsel failed to argue and/or cite other cases that are close to identical to [Petitioner's]" (<u>id.</u> at 8), "[trial c]ounsel was clearly unprepared for the sentencing hearing, failing to cite cases where similarly situated defendants received more appropriate sentences" (<u>id.</u> at 9), and Petitioner "would have received a lesser sentence had [trial] counsel cited the similar and appropriate case[s]" (<u>id.</u> at 11);

10) trial counsel "fail[ed] to advise the Court that imprisonment was not the only available sentence that would reflect the seriousness of the offense, promote respect for the law, and provide justifiable punishment" (<u>id.</u> at 6 (stray comma omitted));

11) trial counsel "fail[ed] to argue for a sentencing variance" (<u>id.</u> at 7); and

12) trial counsel "failed to challenge sentencing enhancements, which are often excessive due to changes in technology" (<u>id.</u> at 9; <u>see also</u> <u>id.</u> at 11 ("[C]ounsel rendered

ineffective assistance by failing to object to th[is] Court's sentencing calculation(s).")).[6]

Petitioner's 12 sub-claims of trial counsel ineffectiveness thus fall into four categories: (A) one sub-claim regarding pretrial motions (sub-claim eight); (B) three sub-claims regarding the guilty plea (sub-claims four, five, and seven); (C) seven sub-claims regarding sentencing (sub-claims one, two, six, and nine through 12); and (D) one sub-claim regarding post-conviction events (sub-claim three). The sub-claims in each category lack merit.

The only sub-claim in the first category, sub-claim eight, alleges that Petitioner's trial counsel acted ineffectively by failing to "[p]repare or file any Rule 12 (pre-trial motions) submissions of any sort." (Id. at 5.) However, Petitioner's

---

[6] Beyond the 12 above-referenced, somewhat-specific sub-claims of ineffective assistance, the Section 2255 Motion contains other, more generic allegations against Petitioner's trial counsel, such as that he failed to "[s]atisfy the Sixth Amendment duties of counsel throughout the case by not representing [] Petitioner to the very best of his ability" (Docket Entry 25 at 5), to "[a]ct in Petitioner's best interest and advocate his cause" (id.), and to "[h]onor and protect [] Petitioner's rights to due-process" (id.) These allegations provide no basis for relief, because (as the Section 2255 Motion acknowledges), to make out an ineffectiveness claim, Petitioner "'must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment'" (id. (quoting Strickland v. Washington, 466 U.S. 668, 690 (1984))). In other words, "a habeas petition is expected to state facts that point to a real possibility of constitutional error. . . . Thus, vague and conclusory allegations [of this sort] . . . may be disposed of without further investigation by th[is] Court." United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013) (internal quotation marks omitted).

Section 2255 Motion does not identify any pretrial motion his trial counsel should have filed, much less any evidence showing that any such motion would have altered the case's outcome (and, in particular, Petitioner's decision to plead guilty). (See id. at 1-12; see also Docket Entry 29 at 1-7 (neglecting to discuss pretrial motions).)  As a result, sub-claim eight fails as a matter of law. See, e.g., Hernandez v. United States, Nos. 1:15CR251, 1:16CV1243, 2017 WL 3877855, at *4 (E.D. Va. Sept. 5, 2017) (unpublished) ("[The p]etitioner claims [his a]ttorney [] failed to file substantive pretrial motions to challenge the government's case.  But [the p]etitioner fails to even attempt to identify what type of motion could have been filed or why that motion might have been successful.  Even if [he] had identified the pre-trial motions that could have been filed, an attorney's failure to bring a pre-trial motion in a case where a defendant does not elect to go to trial cannot constitute ineffective assistance.  Thus, [the p]etitioner's [c]onclusory and unsubstantiated allegations are unavailing on this claim."); see also Tollett v. Henderson, 411 U.S. 258, 267-68 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea . . . .").

The second category of trial counsel ineffectiveness sub-claims in the Section 2255 Motion focuses on Petitioner's guilty plea. Specifically, sub-claim four alleges that, "had [he] been properly advised rather than coerced or induced to plead guilty and had [he] proceeded to trial, he could have received a lesser charge/offense and sentence" (Docket Entry 25 at 3), sub-claim five alleges that he "was never advised of a 'Nolo Contendere' plea and did not understand the legal significance of such" (id.), and sub-claim seven alleges that trial counsel failed to "[n]egotiate a more favorable plea offer/bargain in a timely manner" (id. at 5). Those plea-related sub-claims all lack merit.

Going in reverse order, sub-claim seven falls short because no authority "holds that [a defendant's] counsel was ineffective for failing to negotiate a plea agreement that the defendant would find [more] favorable. And more to the point, there is no evidence in the record that the Government ever [would have] offered any [more favorable] plea deal . . . ." Bowens v. United States, Nos. 5:12CV123, 5:07CR50-14, 2015 WL 3882342, at *6 (W.D.N.C. June 16, 2015) (unpublished), appeal dismissed, 624 F. App'x 91 (4th Cir. 2015); see also United States v. Basham, 789 F.3d 358, 375 (4th Cir. 2015) ("[T]o succeed on his ineffective assistance claims, [the petitioner] is not entitled to satisfy the prejudice requirement through rank speculation . . . ." (internal quotation marks omitted)).

A similar analysis dooms sub-claim five, as a neighboring court recently explained in rejecting an analogous claim:

> In short, with respect to Petitioner's claim[] regarding ineffective assistance based on [his trial] counsel's alleged failure to inform Petitioner about his options with respect to a . . . *nolo contendere* plea, Petitioner has failed to point to specific facts demonstrating that, "but for the ineffective advice of counsel there is a reasonable probability that such a plea offer would have been presented to the [C]ourt," "the [C]ourt would have accepted its terms, and that the conviction or sentence would have been less severe than under the [J]udgment and sentence that in fact w[as] imposed." Thus, even assuming, arguendo, that [his trial] counsel's conduct fell below the objective standard of reasonableness, Petitioner has not demonstrated prejudice [as required] under *Strickland[ v. Washington*, 466 U.S. 668 (1984)] . . . .

Holmes v. United States, Nos. 4:09CR85, 4:13CV113, 2015 WL 402957, at *11 (E.D. Va. Jan. 28, 2015) (unpublished) (internal brackets, citation, and ellipsis omitted) (quoting Lafler v. Cooper, 566 U.S. 156, 164 (2012)); see also United States v. Dorman, 496 F.2d 438, 440 (4th Cir. 1974) (holding that a defendant "does not have an absolute right to plead nolo contendere"); McGhee v. United States, Nos. 4:12CR10, 4:14CV140, 2016 WL 1626613, at *7 n.6 (E.D. Va. Apr. 20, 2016) (unpublished) ("[E]ven if an Alford plea or nolo contendere plea was accepted, such a plea . . . would almost certainly have resulted in [the p]etitioner receiving no credit for acceptance of responsibility." (emphasis in original)).

Nor can Petitioner secure collateral relief based on the (unsworn) assertion (in sub-claim four) that his trial counsel

"coerced or induced [him] to plead guilty" (Docket Entry 25 at 3; see also id. at 12 (bearing Petitioner's signature without acknowledgment of perjury penalties or evidence of oath)). As the Response by the United States observes, Petitioner's "contentions that he was forced or pushed to accept the plea directly contradict his sworn answers in the plea colloquy." (Docket Entry 27 at 10; see also Docket Entry 20 at 3 (setting forth administration of oath to Petitioner and his understanding that "false answers subject[ed him] to . . . prosecution . . . for perjury"), 5 ("THE COURT: Are you satisfied when [sic] [counsel's] representation? [Petitioner]: Yes, ma'am."), 6 ("THE COURT: You do not have to plead guilty. You can plead not guilty and go to trial. . . . Do you understand that? [Petitioner]: Yes, ma'am."), 7-8 (documenting Petitioner's admissions that he read, understood, and signed Plea Agreement), 9 ("THE COURT: Has anybody made any threats or otherwise attempted to force you to plead guilty against your wishes? [Petitioner]: No, ma'am."), 15 ("THE COURT: Are you pleading guilty because you are, in fact, guilty? [Petitioner]: I am.").)

"A defendant's solemn declarations in open court affirming a plea agreement carry a strong presumption of verity, because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy. . . . Thus, in the absence of extraordinary circumstances, . . . a district court should, without holding an evidentiary hearing, dismiss any § 2255

motion that necessarily relies on allegations that contradict [a defendant's] sworn statements." United States v. Lemaster, 403 F.3d 216, 220-21 (4th Cir. 2005) (internal brackets, citations, ellipses, and quotation marks omitted).  Petitioner has not offered any evidence of any exceptional circumstances that would warrant disregarding his prior sworn statements.  (See Docket Entry 25 at 1-12; see also Docket Entry 29 at 1-2 ("I do not dispute my answers to the questions at my plea hearing; my answers were whatever I was told to say.  That is my responsibility, yet it is not an attempt to impeach myself.  I don't even remember the hearing." (internal quotation marks omitted)).)[7]  Accordingly, the Court should reject Petitioner's trial counsel ineffectiveness sub-claim four.

The third (and largest) category of ineffective assistance by trial counsel presented in the Section 2255 Motion concerns Petitioner's sentencing.  In particular, sub-claims one, two, six,

_____

[7] Alternatively, this sub-claim fails as a matter of law because Petitioner has offered nothing to support his contention that, by opting for trial, he "could have received a lesser charge/offense and sentence" (Docket Entry 25 at 3) and thus he has not made the required "show[ing] that declining to plead guilty would have been rational under the circumstances," United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012) (internal quotation marks omitted).  (See Docket Entry 25 at 1-12; see also Docket Entry 29 at 1-7 (focusing on alleged ineffectiveness of Petitioner's trial counsel at sentencing, not as to guilty plea).)  Moreover, as noted by the United States in its Response, Petitioner's statement about securing a lesser sentence via trial "ignores the operation of USSG § 3E1.1, Acceptance of Responsibility, and its inclusion as a term in the Plea Agreement.  The operation of [Section] 3E1.1 shows that . . . going to trial would have likely resulted in [Petitioner] receiving a lengthier sentence."  (Docket Entry 27 at 12.)

and nine through 12 allege sentencing-related failures by his trial counsel (A) "to object to or challenge certain admissions" (Docket Entry 25 at 1), (B) to prevent "the Court [from] overlook[ing] and/or down play[ing] the valuable testimony of expert Christie Cornwell" (id.), (C) to "mention . . . any of the relevant factors that would or could have resulted in a lesser sentence" (id. at 4), (D) to "point[] to (or cite[]) numerous cases with similar circumstances where substantial departures from the [S]entencing [G]uidelines have been upheld on appeal" (id. at 6) and/or "similarly situated defendants received more appropriate sentences" (id. at 9; see also id. at 8 (describing omitted cases as "close to identical to [Petitioner's]")), (E) "to advise the Court that imprisonment was not the only available sentence that would reflect the seriousness of the offense, promote respect for the law, and provide justifiable punishment" (id. at 6 (stray comma omitted)), (F) "to argue for a sentencing variance" (id. at 7), and (G) "to challenge sentencing enhancements" (id. at 9), respectively. All (seven) of those sentencing-related sub-claims lack merit.

As to sub-claim one, Petitioner has identified neither the "admissions" (id. at 1) to which his trial counsel purportedly should have "object[ed]" (id.) nor the basis for any such objection. (See id. at 1-12; Docket Entry 29 at 1-7.) Similarly, as to sub-claim two, Petitioner has not specified what part of Cornwell's testimony the Court "overlook[ed] and/or down play[ed]"

(Docket Entry 25 at 1), let alone what steps his trial counsel should have taken to cause the Court to give her testimony "a stronger effect" or more "significant weight" (id. at 6). (See id. at 1-12; Docket Entry 29 at 1-7.) Simply put, as to sub-claims one and two, "Petitioner has provided only conclusory allegations which meet neither the error nor the prejudice prong of the <u>Strickland</u> analysis." <u>Cano v. United States</u>, Nos. 1:05CR354-4, 1:09CV321, 2009 WL 3526564, at *3 (M.D.N.C. Oct. 22, 2009) (unpublished) (Dietrich, M.J.), <u>recommendation adopted</u>, slip op. (M.D.N.C. Dec. 29, 2009) (Beaty, C.J.); <u>see also</u> <u>Whitley v. United States</u>, Nos. 1:03CR445, 1:12CV67, 2014 WL 4443295, at *6 n.1 (M.D.N.C. Sept. 9, 2014) (unpublished) (recommendation of Webster, M.J., adopted by Beaty, S.J.) ("Unsupported, conclusory allegations [in a motion under Section 2255] do not warrant an evidentiary hearing, much less relief.") (citing <u>Nickerson v. Lee</u>, 971 F.2d 1125, 1136 (4th Cir. 1992), <u>abrog'n on other grounds recog'd</u>, <u>Yeatts v. Angelone</u>, 166 F.3d 255 (4th Cir. 1999)), <u>appeal dismissed</u>, No. 14-7424, 2015 WL 1543893 (4th Cir. Apr. 8, 2015) (unpublished).[8]

Sub-claims six and ten through 12, in turn, fail as a matter of law, because the record conclusively refutes their unsworn

---

[8] To the extent Petitioner's Section 2255 Motion asserts a claim of ineffective assistance against his appellate counsel based on the same (above) conclusory allegations regarding Cornwell (<u>see</u> Docket Entry 25 at 6), that claim fails for the same (above) reasons and based on the same (above) authority.

allegations.  In sub-claim six, Petitioner asserted that his trial

counsel "did not mention, at sentencing, any of the relevant

factors that would or could have resulted in a lesser sentence."

(Docket Entry 25 at 4.)  The record, however, reflects that

Petitioner's trial counsel did address – in a Sentencing Memorandum

(Docket Entry 15) (which the Court reviewed prior to the sentencing

hearing (<u>see</u> Docket Entry 21 at 3-4)) and/or through testimony and

argument at the sentencing hearing – all but one[9] of the factors

---

[9] The only matter Petitioner's Section 2255 Motion identified
as mitigating, which his trial counsel did not mention in the
Sentencing Memorandum or at the sentencing hearing, concerns
Petitioner's (unsworn) assertion that he "did not know he was
committing a Federal crime by accessing the images and[,] had he
known the potential consequences, he would not have viewed or
access [sic] any of the images" (Docket Entry 25 at 4).  Petitioner
cannot show deficient performance as to that omission, because his
trial counsel reasonably could have concluded that such attempted
minimization of culpability would work against Petitioner's quest
for leniency.  <u>See</u> <u>United States v. Kirchof</u>, 505 F.3d 409, 415-16
(6th Cir. 2007) ("None of the other factors to which [the
defendant] directs the court are so compelling as to necessitate a
shorter sentence. . . . [He] argues that he is not a pedophile but
was instead merely ignorant of the seriousness of his conduct [in
obtaining and sharing child pornography via computer] and suffers
from [a mental illness].  While these facts, if believed, might
tend to reduce [his] culpability, they also support a conclusion
that [he] continues to minimize his conduct without fully accepting
responsibility."); <u>United States v. Cunningham</u>, 680 F. Supp. 2d
844, 860 (N.D. Ohio 2010) (citing defendant's "attempt[] to
minimize his culpability" for non-production, computer-based child
pornography offenses as factor weighing against downward variance),
<u>aff'd</u>, 669 F.3d 723 (6th Cir. 2012).  Further, even if Petitioner
could show that his trial counsel acted unreasonably by omitting
the argument in question, Petitioner has not shown that the Court
would have imposed a lesser sentence based on such an argument.
(<u>See</u> Docket Entry 25 at 1-12; Docket Entry 29 at 1-7.)
Accordingly, any ineffective assistance claim on this front cannot
(continued...)

now highlighted by Petitioner.  (<u>Compare</u> Docket Entry 25 at 4
(citing Petitioner's "voluntar[]y participat[ion] in two (2)
polygraph[s] . . . [which he] passed," his history as "a law-
abiding citizen with no criminal history[,] . . . a successful
career[, and] . . . a strong support system," his prompt
"cooperat[ion] with law enforcement and the prosecution," his
verified, "voluntar[]y admi[ssion] to [law enforcement] agents that
he would always delete all the images he obtained," his untreated
"long-term depression and . . . other mental health issues," his
"voluntar[]y agree[ment] to and submi[ssion] to a court-ordered
psycho-sexual evaluation, which revealed past trauma and
maladaptive coping mechanism [sic]," his "recei[pt of] counseling[
and] therapy and complet[ion of] treatment," his lack of "threat or
danger to his community," and his "complete[] honest[y], . . .
maint[enance of] his moral character[,] and . . . less[er]
likel[ihood] to re-offend after his accomplishments" (emphasis,
parentheses, internal quotation marks, and stray comma omitted)),
9 (describing "absen[ce]" of "'library' of [child pornography]
material" in Petitioner's possession as "mitigating factor[]"),
<u>with</u> Docket Entry 15 at 2 ("Prior to the search, [Petitioner]
voluntarily admitted that he used the BitTorrent program to

<hr>

⁹(...continued)
succeed.  <u>See</u> <u>Basham</u>, 789 F.3d at 375 ("[The petitioner] is not
entitled to satisfy [<u>Strickland</u>'s] prejudice requirement through
rank speculation . . . ." (internal quotation marks omitted)).

download child pornography.  He indicated that he would download, view and delete the files.  Due to undiagnosed mental health issues stemming from his childhood, [Petitioner] used pornography as a coping mechanism."), 6 ("[Petitioner] did not keep the files that he viewed."), 8-9 ("[Petitioner] was sexually abused by . . . his mother. . . .  [He], until recently, has worked in the banking industry since he graduated from college. . . .  He was successful . . . ."), 10-11 (discussing Petitioner's support from church, family, and friends, his lack of "prior criminal history," his "steps to address the root cause of his criminal conduct," including "attend[ing] a 4-day workshop . . . [for] people struggling with sin of a sexual nature," "receiving outpatient psychotherapy from Christie Cornwell," and "attend[ing] a weekly Christian-based support group for men," his "voluntar[]y agree[ment] to submit to a court-ordered psychosexual evaluation," his voluntary participation in "polygraph testing" which "verified" his "abst[inence] from pornography of any kind since April 2014" and his lack of any history of actual or attempted "physical sexual contact with a minor"), 12-14 (detailing Cornwell's opinion that Petitioner "has the desire and ability to remain offense free" without "need of incarceration," as well as psychosexual evaluator's findings as to Petitioner's mental health conditions and assessment of his "risk of committing additional sexual offenses [a]s Low"), and Docket Entry 21 at 7-17 (documenting

18

testimony from Cornwell about her treatment of Petitioner,
including his immediate "accept[ance of] responsibility" and
"honest[y]," his other treatment efforts, his "very solid support
system," her agreement with the psychosexual evaluator's assessment
of Petitioner's low risk profile, his "rough childhood," including
"sexual[] abuse[] as a child before puberty by more than one
perpetrator, one of which was his mother," his "mental health
issues," including "anxiety and depression," his resort to child
pornography to cope with past trauma, his lack of any criminal
history, his positive employment history, his successful completion
of polygraphs regarding his lack of actual or attempted sexual
contact with children, and the absence of any need for his
incarceration), 20-27 (recounting testimony by Petitioner's
minister about Petitioner's lack of understanding of BitTorrent
system, including its file-sharing capacity, his outstanding
character, his early acceptance of responsibility, his efforts at
treatment, and the lack of any need for his incarceration), 32-39
("argu[ing] that a probationary sentence is sufficient in this
particular case" because, inter alia, Petitioner "has no prior
record," he "submitted polygraph examinations to the Court that
indicate that he has not committed [or attempted] any [sexual]
conduct [with children]," he "sought treatment both at [a w]orkshop
. . . and [with] Ms. Cornwell," he "complied with treatment," the
psychosexual evaluator's "report indicates he's a low risk, and Ms.

Cornwell indicates that he is not a threat to the public," "his computer knowledge" was limited, "[h]e never really kept any of [the child pornography he downloaded]," "he didn't even really know that he was in a peer-to-peer network," "he's continued in a support group," and "[h]e also has a very good support system").)

Similarly, although sub-claims ten through 12 allege (in unsworn fashion) that Petitioner's trial counsel "fail[ed] to advise the Court that imprisonment was not the only available sentence that would reflect the seriousness of the offense, promote respect for the law, and provide justifiable punishment" (Docket Entry 25 at 6 (stray comma omitted)), "fail[ed] to argue for a sentencing variance" (id. at 7), and "failed to challenge sentencing enhancements, which are often excessive due to changes in technology" (id. at 9), respectively, the record definitively establishes that Petitioner's trial counsel – in both the text of the Sentencing Memorandum and his remarks at the sentencing hearing – advised the Court that, in this case, probation would serve the statutory purposes of sentencing (see, e.g., Docket Entry 15 at 1, 26-29; Docket Entry 21 at 32-34, 39), argued that the Court should vary downward from the Sentencing Guidelines advisory range (which called for a prison term of 97-120 months) to probation (see, e.g., Docket Entry 15 at 1, 4, 26-29; Docket Entry 21 at 32-34, 39), and (as part of the variance argument) challenged numerous enhancements which produced that advisory range, including because of their

failure to account for the impact of technological change (see, e.g., Docket Entry 15 at 5-7, 14-26; Docket Entry 21 at 34-38).[10]

The remaining sentencing-related sub-claim (sub-claim nine) alleges that, "[h]ad [trial] counsel been prepared . . ., he could have (prior to sentencing) pointed to (or cited) numerous cases with similar circumstances where substantial departures from the [S]entencing [G]uidelines have been upheld on appeal" (Docket Entry 25 at 6) and/or "where similarly-situated defendants received more appropriate sentences" (id. at 9). According to Petitioner, he "would have received a lesser sentence had [his trial] counsel cited the similar and appropriate case[s]." (Id. at 11.) The record, however, belies that bald assertion, as the Court made clear that it selected Petitioner's (downward variance) sentence after carefully comparing him (and his individual circumstances) to

---

[10] To the extent sub-claim 12 contends Petitioner's trial counsel rendered ineffective assistance by attacking Sentencing Guidelines enhancements via variance arguments (rather than objections to the enhancements) that contention falls short, given Petitioner's failure to produce any evidence showing that his conduct did not satisfy the requirements for those enhancements or that the Court would have so found (see Docket Entry 25 at 1-12; Docket Entry 29 at 1-7). See, e.g., Hagins v. United States, Nos. CR3:03-1086, 3:04-23312, 2005 WL 2654236, at *3 (D.S.C. Oct. 17, 2005) (unpublished) (denying claim that "counsel was ineffective for failing to object to [Sentencing Guidelines] enhancement" because the petitioner "advance[d] no evidence" and did "not show that th[e] court would have sustained any objection"); see also Slayton, 629 F. App'x at 477 (holding that this Court "properly calculated . . . the applicable Guidelines range").

21

similarly-situated defendants whom the Court previously sentenced.

(See Docket Entry 21 at 42-45.)  Most notably, the Court stated:

> [W]hat I am doing in these cases, generally speaking is,
> varying down two levels, because I think the guidelines
> overweigh the use of a computer and the number of images
> taken together.  So that's what I am going to do in
> [Petitioner's] case.  That would make the guideline range
> 78 to 97 months.  With that guideline range . . ., it
> seems to me he ought to be sentenced at the bottom of
> that range.
>
> He's like almost everybody I see in these cases; he has
> no criminal record.  He's got work history. . . .  He's
> got a huge support system . . ., but that's almost always
> true in these situations.
>
> . . . [T]his offense is too serious for a probationary
> sentence. . . .  [Petitioner] is watching children being
> raped on his computer screen . . . .  He is not doing it,
> but he is participating in it.  It is a serious, serious
> crime.
>
> . . . It is so damaging to society as a whole, and it is
> something that I have no problem with the fact that
> Congress has made it illegal and said it needs to be
> punished seriously.
>
> . . . [T]he factors [Petitioner's trial counsel] has
> identified do support a sentence at the bottom of the
> guideline range as I have revised it. . . .

(Id. at 44-45 (emphasis added).)

Moreover, a review of the cases Petitioner argues his trial
counsel should have referenced further confirms that their
consideration could not have altered the outcome in his case.  For
example, Petitioner's Section 2255 Motion cites United States v.
Crespo-Rios, 787 F.3d 34 (1st Cir. 2015), United States v. Morace,
594 F.3d 340 (4th Cir. 2010), United States v. Burr, 88 F. App'x

631 (4th Cir. 2004), and United States v. White, 2 F. App'x 295 (4th Cir. 2001), for the proposition that "courts have accepted arguments in cases very similar to [] Petitioner's in regards to applying a lesser or more appropriate sentence." (Docket Entry 25 at 6.) However, the first two of those decisions reversed downward variances, see Crespo-Rios, 787 F.3d at 35; Morace, 594 F.3d at 342, and the other two cited decisions did not address variances (as both involved review of sentences imposed within the ranges prescribed by the mandatory Sentencing Guidelines regime that pre-dated United States v. Booker, 543 U.S. 220 (2005)), see Burr, 88 F. App'x at 632-33; White, 2 F. App'x at 296-98.[11]

---

[11] Likewise, the Section 2255 Motion appears to identify United States v. Stall, 581 F.3d 276 (6th Cir. 2009), United States v. Duhon, 541 F.3d 391 (5th Cir. 2008), and United States v. Polito, 215 F. App'x 354 (5th Cir. 2007), as decisions Petitioner's trial counsel "failed to argue and/or cite . . . that are close to identical to his [case]" (Docket Entry 25 at 8). The latter two decisions involved offenses that produced advisory ranges of only 27 to 33 months in prison. See Duhon, 541 F.3d at 394; Polito, 215 F. App'x at 356. Accordingly, the variances to probation (the equivalent of 27 months below the low-end of the advisory range) affirmed in those cases do not differ materially from the 21-month downward variance Petitioner received from the low-end of his advisory range. He therefore cannot show that citing those decisions would have impacted his sentence. The cited Sixth Circuit decision addressed a larger downward variance (from an advisory range of 57 to 71 months in prison to one day in custody and 10 years of supervised release) based on circumstances akin to the mitigating factors Petitioner's trial counsel pressed at sentencing. See Stall, 581 F.3d at 278-81. However, Petitioner cannot establish that knowledge of the 57-month downward variance upheld in that case would have caused this Court to vary downward more than 21 months in this case, particularly given that, in Stall, the Sixth Circuit acknowledged the existence of "reasons to
(continued...)

23

The Section 2255 Motion also singles out <u>United States v. Smith</u>, 275 F. App'x 184 (4th Cir. 2008), and <u>United States v. Pauley</u>, 511 F.3d 468 (4th Cir. 2007), as cases the citation of which "could have [led to Petitioner] receiv[ing] a more favorable sentence" (Docket Entry 25 at 11). In those child pornography cases, the Fourth Circuit did affirm downward variances marginally greater than the 21-month downward variance granted to Petitioner, but those variances rested (in material part) on facts not present in his case. <u>See</u> <u>Smith</u>, 275 F. App'x at 184-88 (upholding downward variance of 54 months, where district court relied, inter alia, on evidence that defendant convicted of possessing child pornography "did not suffer from paraphilia," "was not a pedophile," and "had

---

[11](...continued)
question the district court's judgment," <u>id.</u> at 282, "problems with this sentence," <u>id.</u> at 283, and "doubt as to whether [it] promotes just punishment," <u>id.</u>, and that, in a later decision reversing (as substantively unreasonable) another district court's downward variance from an advisory range of 78 to 97 months in prison to one day in custody and five years of supervised release, the Sixth Circuit emphasized that "in possession-of-child-pornography cases . . . sentences of significant terms of imprisonment are not unusual," <u>United States v. Robinson</u>, 778 F.3d 515, 522 (6th Cir. 2015) (citing affirmances of prison terms greater than or close to Petitioner's sentence). <u>See</u> <u>Valenzuela-Lizarraga v. United States</u>, Nos. 1:09CR285, 1:10CV943, 2011 WL 3841964, at *3 (M.D.N.C. Aug. 26, 2011) (unpublished) (Dixon, M.J.) ("[The petitioner] states that the lower sentences in [other] cases could have been pointed to as supporting a lower sentence in his own case. . . . [He] has done nothing more than selectively pick a few cases where a defendant was given a low sentence following [a similar] conviction. This approach ignores cases where [other] defendants have received higher sentences for that crime."), <u>recommendation adopted</u>, slip op. (M.D.N.C. Nov. 22, 2011) (Schroeder, J.).

a low risk of recidivism given his age [of 64] and lack of mental illness" (more specifically described as "'absence of <u>any</u> risk that he will involve himself in similar conduct in the future'"[12] (emphasis added))); <u>Pauley</u>, 511 F.3d at 470, 474 (declining to overturn 36-month downward variance, where defendant convicted of possessing nude photographs of teenager "was approached by" teenager about photographs, "fewer than two dozen photographs were taken with [teenager's] Polaroid camera," teenager's "face did not appear in any of the photographs," and "no other child pornography was found in [defendant's] house," because those "facts related to the nature and circumstances of [the] offense were mitigating").[13]

In sum, "Petitioner's belief that the [decisions] he proffers could have changed his sentence . . . is nothing more than speculation. He cannot meet the performance or prejudice requirement of an ineffective assistance claim. Petitioner's [sub-claim nine] should be denied." <u>Valenzuela-Lizarraga v. United</u>

---

[12] In contrast, Cornwell characterized Petitioner (then 45 years old (<u>see</u> Docket Entry 13 at 2)) as suffering from "sexual paraphilia" (Docket Entry 15-2 at 2), endorsed the psychosexual evaluator's diagnoses of Petitioner (<u>see</u> Docket Entry 21 at 10), which included "Pedophilic Disorder, Nonexclusive Type" and other mental illnesses (<u>see</u> Docket Entry 13 at 13), and never described Petitioner's prognosis as an absence of <u>any</u> risk of re-offending (<u>see</u> Docket Entry 15-2 at 1-2; Docket Entry 21 at 5-19).

[13] Conversely, Petitioner possessed "a total of 1,773 images" of child pornography (Docket Entry 13 at 6), including of adult males raping girls as young as "approximately 4-6 years of age" (<u>id.</u>), as well as of girls (with their faces visible) subjected to beastiality and bondage (<u>see</u> <u>id.</u> at 5).

States, Nos. 1:09CR285, 1:10CV943, 2011 WL 3841964, at *3 (M.D.N.C. Aug. 26, 2011) (unpublished) (Dixon, M.J.), recommendation adopted, slip op. (M.D.N.C. Nov. 22, 2011) (Schroeder, J.).

Lastly (as to trial counsel ineffectiveness), the lone sub-claim in the fourth category (sub-claim three) seeks relief because Petitioner's trial counsel "fail[ed] to argue for a lesser sentence in a post-conviction motion for a reduced sentence." (Docket Entry 25 at 2 (parentheses omitted) (emphasis added).)  The Court should reject that sub-claim, because, "in the postconviction context[,] . . . prisoners have no constitutional right to counsel," Lawrence v. Florida, 549 U.S. 327, 336–37 (2007), and, "where no Sixth Amendment right to counsel attaches to the proceeding, an ineffective assistance claim cannot be sustained," United States v. MacDonald, 966 F.2d 854, 859 n.9 (4th Cir. 1992).[14]

---

[14] To the extent one could construe this sub-claim to allege ineffectiveness for failure to pursue not a "post-conviction motion" (Docket Entry 25 at 2 (internal parentheses omitted)) but rather a post-sentencing, pre-judgment motion under Federal Rule of Criminal Procedure 35(a) (to which some Sixth Amendment right might attach), this sub-claim still would fall short.  Under that Rule, "[w]ithin 14 days after sentencing, the [C]ourt may correct a sentence that resulted from arithmetical, technical, or other clear error." Fed. R. Crim. P. 35(a).  Petitioner "does not assert that th[is] Court committed an arithmetical or technical error at [his] sentencing. . . .  [Further,] 'clear error' under the Rule requires some reversible error at the initial sentencing . . . .  [Petitioner] can point to no reversible error at sentencing." United States v. Fields, 552 F.3d 401, 404 (4th Cir. 2009).  Indeed, on direct appeal, the Fourth Circuit expressly "conclude[d] that th[is C]ourt made no procedural errors in imposing sentence," Slayton, 629 F. App'x at 477, as well as that Petitioner "failed to
(continued...)

As a final matter, Petitioner's Section 2255 Motion alleges that his appellate counsel provided ineffective assistance (1) by "failing to raise, and/or challenge trial (or sentencing) counsel's ineffectiveness rather than attacking th[is] Court's decision" (Docket Entry 25 at 6; see also id. at 9 ("[T]here had been a conflict of interest with regards to [Petitioner's] appellate counsel as he was a referral from [trial] counsel. As a result, appellate counsel . . . [f]ailed to raise any ineffectiveness of [trial] counsel . . . and did not make an attempt to develop the record."), 10 ("Appellate counsel also failed to raise relevant issues regarding trial (or sentencing) counsel's performance on direct appeal.")), (2) by "fail[ing] to file or pursue a Writ of Cert[iorari]" (id. at 9), and (3) by "failing to argue for a downward variance, which in child pornography cases like [Petitioner's] could be consider [sic] reasonable under certain

_____

[14] (...continued)
rebut the presumption of reasonableness applicable to his below-Guidelines sentence and . . . to show that th[is C]ourt's considerable discretion [in imposing sentence] was abused," id. at 478. Moreover, in his Reply, Petitioner "clarif[ied] that [he did] not question[] the Court's authority to impose the sentence [he] receive[d]." (Docket Entry 29 at 2; see also id. at 6 ("I am not arguing that the Court did not have the legal right to impose my sentence, or that I am 'entitled to relief.'").) In short, "there was no 'clear error' in [Petitioner's] sentence that would have justified the filing of a Rule 35(a) motion, and [his trial counsel's] failure to undertake a futile action that has no chance of success does not amount to ineffective assistance of counsel." United States v. Frazier, Crim. No. 09-29, 2015 WL 5595611, at *7 (M.D. La. Sept. 21, 2015) (unpublished).

circumstances" (id. at 10). Each of these three sub-claims of appellate counsel ineffectiveness lacks merit.

First, "[c]laims of ineffective assistance of counsel may be raised on direct appeal only where the record conclusively establishes ineffective assistance," United States v. Baptiste, 596 F.3d 214, 216 n.1 (4th Cir. 2010), and (for reasons detailed above) the record even now (let alone at the time of direct appeal) establishes no trial counsel ineffectiveness. Second, "[t]he Supreme Court held in *Ross v. Moffitt*, 417 U.S. 600, 617 (1974), that a criminal defendant has no constitutional right to counsel to pursue a petition for a writ of certiorari. And where there is no constitutional right to counsel, there cannot be constitutionally ineffective assistance of counsel." Wyatt v. United States, 574 F.3d 455, 459 (7th Cir. 2009) (internal parallel citations omitted); accord Nichols v. United States, 563 F.3d 240, 248–50 (6th Cir. 2009); Steele v. United States, 518 F.3d 986, 988 (8th Cir. 2008); Derman v. United States, 298 F.3d 34, 45 n.7 (1st Cir. 2002); Lopez-Vera v. United States, Nos. 1:09CR226, 1:12CV55, 2015 WL1717836, at *8 (M.D.N.C. Apr. 15, 2015) (unpublished) (Schroeder, J.).[15] Third, Petitioner's appellate counsel did argue to the

---

[15] Even if the Court construed Petitioner's Section 2255 Motion to present a claim for appellate ineffectiveness based on an alleged violation of the Fourth Circuit's administrative plan implementing the Criminal Justice Act of 1964 ("CJA Plan"), the Court should deny relief because, as "other courts in this Circuit
(continued...)

Fourth Circuit that this Court should have granted a greater downward variance; the Fourth Circuit simply rejected that argument. See <u>Slayton</u>, 629 F. App'x at 477-78; <u>see also</u> <u>Banks v. United States</u>, Nos. 5:05CR30, 5:08CV162, 2010 WL 3855065, at *21 (N.D.W. Va. July 21, 2010) (unpublished) ("Merely because the [c]ourt ruled against [the p]etitioner on this issue does not prove that [his] counsel was ineffective."), <u>recommendation adopted</u>, 2010 WL 3854426 (N.D.W. Va. Sept. 29, 2010) (unpublished), <u>appeal dismissed</u>, 439 F. App'x 234 (4th Cir. 2011).

<u>CONCLUSION</u>

All of Petitioner's collateral claims fail as matter of law.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Section 2255 Motion (Docket Entry 25) be denied.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

October 10, 2018

---

[15](...continued)
have held [, such] challenges involving the CJA [P]lan's provisions regarding petitions for certiorari should be pursued via a motion in the [Fourth Circuit] to recall the mandate, rather than under § 2255," <u>Foote v. United States</u>, Nos. 1:06CR177-1, 1:11CV42, 2013 WL 5355543, at *3 n.2 (M.D.N.C. Sept. 24, 2013) (unpublished) (Peake, M.J.) (citing cases), <u>recommendation adopted</u>, 2013 WL 5962983 (M.D.N.C. Nov. 7, 2013) (unpublished) (Tilley, S.J.), <u>aff'd</u>, 784 F.3d 931 (4th Cir. 2015).